UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SCOTT J. MILLS,

        Plaintiff,

v.

CAPITAL ONE BANK, PRESSLER &
PRESSLER LLP, THOMAS M. BROGAN,
RALPH GULKO, SHELDON H. PRESSLER,
LORI R. CETANI, LAWRENCE J.
McDERMOTT, JR., GERARD J. FELT,
JOHN DOE #1-5 and JOHN DOE #6-10,

        Defendants.

Civ. Action No. 08-3788 (KSH)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

        This action is brought by *pro se* plaintiff Scott Mills against Capital One Bank ("Capital One"), as well as the law firm Pressler & Pressler LLP ("Pressler"), and several individual lawyers of the that firm, Thomas M. Brogan, Ralph Gulko, Sheldon H. Pressler, Lori R. Cetani, Lawrence J. McDermott, Jr., and Gerard J. Felt (collectively, the "Pressler defendants"). Before the Court are separate motions to dismiss filed by Capital One (D.E. 27) and the Pressler defendants (D.E. 28).

**I.    Claims Asserted and Procedural Posture**

        Capital One moves to dismiss for lack of subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)), and for failure to state a claim (Fed. R. Civ. P. 12(b)(6)), principally on the basis of the *Rooker-Feldman* doctrine and principles of collateral estoppel and *res judicata*. The basis for the legal arguments is an earlier action in the Special Civil Part, Bergen County (the "state court action") in which summary judgment was granted against Mills for a consumer debt owed to

Capital One in the amount of $1,756.$^{39}$.  The Pressler defendants move for dismissal on additional grounds, principally arguing that Mills's claims under the Fair Debt Collection Act ("FDCA") have no basis in law or fact; that the Fair Credit Reporting Act ("FCRA") is inapplicable to them because they are not furnishers of credit information; that Mills fails to plead any of the required elements of the federal and state versions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and that Mills's claims against individual attorneys are frivolous and not based in law or fact.

Mills's pleadings assert 17 separate claims for relief.  Because it is central to Capital One's *Rooker-Feldman* argument that the Court determine whether the footprint of this case is entirely within the footprint of the state court action, an examination of the 17 claims is in order.

Mills first alleges that the Pressler defendants, acting on behalf of Capital One, violated the FDCPA and FCRA in that they "fail[ed] to provide verification . . . of the alleged debts," "inferr[ed] that Plaintiff has no rights by alleging that Plaintiff is/was responsible and liable for the alleged Account(s) in question," and "claim[ed] that Plaintiff has no 'valid defense' to the alleged debts inferring that Plaintiff has no rights."  As a second claim against them, Mills alleges that the Pressler defendants violated the New Jersey State Uniform Commercial Code in that Capital One and the Pressler firm were "not . . . holder[s] in due course and thus, ha[ve] no standing to pursue or attempt to collect alleged debts"; also that their acts were "done intentionally with the purpose of coercing and deceiving Plaintiff to pay the allege debts on at least one occasion."

As his third claim for relief, Mills asserts a violation of the federal and state RICO statutes in that "Plaintiff suspects [the Pressler defendants] illegally pursue and collect alleged debts in the State of New Jersey and beyond," for the "suspected use of a fictitious and/or

unlicensed and/or [u]n[b]onded collections business name of [Pressler] on at least one occasion," and for "coercing/extorting and deceiving Plaintiff to pay the alleged debts for Defendant[s] unjust enrichment."

Mills asserts "legal fraud" as his fourth claim for relief, alleging that Capital One and the Pressler defendants "in the State Court Case through various submissions to the Bergen County Special Civil Part, falsely and fraudulently swore by numerous affidavits, certifications and submissions that Plaintiff was liable for disputed [Capital One] Accounts without true [e]videntiary [f]act"; the Pressler defendants made misrepresentation in the state court action; and that Capital One and the Pressler defendants filed claims in the state court action even through they knew they were "not permitted" by N.J.S.A. § 45:18-1 to do so.  Mills asserts intentional infliction of emotional distress as his fifth claim for relief, alleging that Capital One and the Pressler defendants engaged in a "pattern of conduct deliberately designed to harass, humiliate, bully and oppress unsophisticated consumers to induce them to forgo professional legal representation in litigation and to induce unsophisticated consumers to make payment of debts they did not incur," and that defendants "conspire[d] to defraud and oppress numerous unsophisticated consumers."

Mills's sixth claim is for abuse of process on grounds that defendants "filed a motion for sanctions in the State Court against Plaintiff," which Mills avers was retaliation for his contributions to a website critical of Pressler and other New Jersey-based debt collectors.  Mills alleges that Capital One and the Pressler defendants jointly conspired to, and did, abuse the legal process and harass Mills in the state court action.  As his seventh claim for relief, Mills asserts "equitable fraud," alleging defendants submitted false sworn documents in the state court action

with the intent to defraud and deceive Mills, and acted with "willfulness, oppression, fraud, and malice."

As his eighth claim, Mills asserts Pressler is liable under a theory of *respondeat superior* for the individual Pressler defendants named in the action. For his ninth claim, Mills asserts *respondeat superior* liability on Sheldon Pressler's part as principal of the Pressler law firm for the acts of the individual law firm employees. As his tenth claim for relief, Mills asserts that Capital One is liable under *respondeat superior* for the acts of the Pressler defendants.

In his eleventh claim, Mills asserts a separate and supplemental claim for abuse of process because defendants "jointly filed on two separate occasions on May 30, 2008 and June 3, 2008 the Specified documents attached hereto with the Bergen County, New Jersey Superior Court with complete and utter lack of regard for the Judicial Process by not notifying Plaintiff 'SM' of the filing of these Documents."

Mills's twelfth claim is for unjust enrichment in that Capital One and the Pressler defendants "jointly have pursued a Claim against this Plaintiff for their own benefit, profit and enrichment through unjust means." As a thirteenth claim Mills alleges that Capital One and the Pressler defendants violated the New Jersey Consumer Fraud Statute ("NJCFA") on grounds they "induced the Plaintiff . . . to engage Declaratory Judicial Tolerance and Defenses which constitutes deceptive trade practices in violation of the [NJCFA]." In his fourteenth claim, Mills asserts that defendants committed common law fraud in making false sworn statements and submissions in the previous state court action.

As his fifteenth cause of action, Mills asserts personal liability against the individual Pressler defendants acting under the authority of Pressler in that they allegedly owed an obligation to the general public under the FDCPA to "provide verifiable and accurate

4

information regarding the alleged debt . . . and failed . . . to do so," failed to verify or validate the alleged debt while acting in their personal capacities, furnished deceptive forms while acting in their personal capacities, and "continued their frivolous [c]laim in the state court . . . using only hearsay testimony and unauthenticated documentation and statements." Mills further alleges that they acted in their personal capacities "to harass, embarrass, cause anguish, embarrass, and bully the Plaintiff [Mills] in to paying an unsubstantiated alleged debt." As his sixteenth cause of action, Mills seeks personal liability against individual named and unnamed defendants for performing the allegedly wrongful acts under the authority of Capital One. As his seventeenth cause of action, Mills seeks redress against Capital One and the Pressler defendants for "reckless behavior" in "act[ing] in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow at all times."

Mills seeks money damages, costs, and fees. Mills also seeks declaratory judgment that defendants' actions violated the FDCPA, and injunctive relief, including dissolution of purportedly corrupt enterprises allegedly in violation of RICO statute.

**II.     Factual Background**

In his complaint, Mills references the prior state court action:

Although this Plaintiff filed a cross motion to dismiss with numerous federal questions stated, the State Court entered a Summary Judgment Award in favor of "COB" and John Doe #6-10 on December 7, 2007 in the amount of $1,756.39 plus costs without any [l]egal [m]erit or [f]actual and [e]videntiary [b]asis whatsoever. The action is referred to as Capital One Bank v. Scott J. Mills, Bergen County Special Civil Part, Docket No: DC-017497-07.

(D.E. 1, ¶ 17.) The record shows Capital One, represented by the Pressler defendants, sued Mills for a consumer debt totaling $1,756.[39], and that Mills filed an answer on September 7, 2007 and defended the suit on the merits acting as his own attorney. (Defs.' Exh. B (summons and

5

complaint), Exh. C (answer).)  According to Capital One's brief on its motion, the underlying grounds are as follows:

> On April 30, 2002, Scott J. Mills applied for and opened a Kmart Mastercard ® credit card account with Capital One . . . . All monthly statements on the [a]ccount were sent to Scott J. Mills at 56 Oak Street, Rochelle Park, New Jersey 07662-4210.  Mr. Mills, or someone on his behalf, made the monthly payments on the [a]ccount until May 2003.  The payments were sent to Capital One, F.S.B., and included the payment coupon detached from the monthly [a]ccount statement and a check made payable to Capital One.  All of the checks were drawn on an account maintained by William A. Provost and Rosemary Provost.  The checks list the address of William A. Provost and Rosemary Provost as 56 Oak Street, Rochelle Park, NJ 07662, the same address as Mr. Mills.

(Defs.' Br. Mot. Dismiss 2-3.)  The record shows that Mills moved for dismissal of the state court action on September 24, 2007, arguing, in part, that no proper contract or documentation making him liable to Capital One existed, that the debt was not properly "verif[ied]" as being owned by Capital One, and that Capital One violated the "Fair Debt Collections Act."  (Defs.' Exh. G (brief in support of motion to dismiss).)  Capital One subsequently moved for summary judgment against Mills, and the Special Civil Part heard oral argument on all pending motions on December 7, 2007.

One of the individual Pressler defendants in this action, Thomas M. Brogan, argued the December 7, 2007 motions before Judge Joseph Rosa, J.S.C., on behalf of then-plaintiff Capital One.

> MR. BROGAN:  Yes, Your Honor, there are three motions before the Court today.  Your Honor, on plaintiff's motion for summary judgment the plaintiff is asking for summary judgment on the basis of a review of all the evidential material supplied by both sides.
> It's plaintiff's contention that the large and accurate extent of the evidential material it has with regard to this matter are the complete absence of any competent, evidential materials referenced by the defendant warrants that summary judgment be granted under the <u>Brill</u> standard.
> With that having been said let's examine plaintiff's proffer.  The first thing I bring to your attention is the Capital One Bank card member agreement.  It is much like any other credit card member agreement, specifically it says – and

6

I'm paraphrasing to some extent, that if you or someone other than you uses the account to make purchases you will be required to reimburse us, that finance charges will continue to accrue on any unpaid balance until the unpaid balance is satisfied in its entirety.  Card member agreement also details the condition for a default, what a default is and what the obligations and responsibility of the cardholder are should a default occur, specifically that – the cardholder would be responsible for collection costs as well as attorney's fees.

Plaintiff has the second proffer – second exhibit in its proffer.  These are the Capital One credit card statements.  The statements –

THE COURT: Do you have the credit card?

MR. MILLS: I never – I never got this credit card, Your Honor.

THE COURT: Did you sign that thing?

MR. MILLS: No, there's no sign – there's no signed anything, they don't have anything.

MR. BROGAN: May – if I may continue?

THE COURT: Go ahead.

MR. MILLS: In their summary judgment – I guess I'll –

THE COURT: Where do you live? Where do you live?

MR. MILLS: Currently 56 Oak Street in Rochelle Park.

THE COURT: How long have you lived there?

MR. MILLS: Off and on probably ten years.

THE COURT: When was the agreement?

MR. BROGAN: Your Honor, the Capital One Bank statements begin April 18, 2002 and they end December 17th –

THE COURT: Were they mailed to this address?

MR. BROGAN: All of the statements that I'm citing are the entire history of the account and all of –

THE COURT: I saw that, you had 92 pages of them.

MR. BROGAN: All of them are mailed to Scott Mills at 56 Oak Street, Rochelle Park, New Jersey, 07 –

MR. MILLS: Your Honor, none of the – none of the checks are made out for me, none of the payments were made from me, they were paid by my mother. I was going to school, she assumed that it was an account of mine. She was probably paying other things as well.  I didn't even know that this was going on until I heard this case, until that I got – Your Honor.

THE COURT: I don't see, Mr. Mills, this – this is not a criminal case where you've got to show things beyond a reasonable doubt. The statements were mailed to where you were living. The checks came from where you living. How could you say that you're not responsible, I don't understand?

MR. MILLS: Your Honor, in – in this case the – this case actually fell apart for them because in their summary – motion for summary judgment they have – they mention – there's three different cases on the checks.  They're testifying that each check says this specific account number, there's a different account numbers, I mean the whole – there's questions – there's numerous –

THE COURT: What question – we're talking about account that ends 7811, am I correct?

7

   MR. BROGAN: Correct. Your Honor, let me say –

   MR. MILLS: Which is their original –

   MR. BROGAN:  -- on this particular account over the 18 months that the account was open there are different account numbers.  However, every single check that plaintiff has provided with the payment stub that you tear off at the bottom and acknowledge that the payment is correct, you sign how much you're paying and you put it in that envelope comes with the account number and it says for Scott Mills.

   Now there's a direct correspondence with each check and with each statement regardless of the account number.  Even if the account number changes at some point there's still a check that is sent to that account number.  Just – even if you look at the first one, the first particular account number, the check for $280.23, front and back side, payment stub made out for $280.23 –

   MR. MILLS: Your Honor, in a letter from Capital One –

   THE COURT: Don't interrupt.

   MR. BROGAN: -- let me finish. And if you look at the next month's corresponding statement, there's the payment, $280.23 and this continues over and over again and if the account number was changed to some other number --- for example ending in 7676 at some point in time, the – the payment stubs, the payments made all continue regardless.  If you scroll through plaintiff's third exhibit the account number changes once again, here's the amount, it says for Scott Mills, the payment is made for $25, it shows up on the next month's statement.

   We sued on the account ending 7881, that's the account number on the account when it went into default.  There were 13 months of payments made just like was made out by – now we know the defendant's mother. She made out the payments for 13 months and then in the last five or six months, from May 2003 to December 18, 2003 the payments stopped, that's a default.

   Now we have local purchases, we have certainly use of the account, Home Depot in Lodi, Kmart in Lodi, Toys R Us in Paramus, lots of purchases for videogame, web video stores, West Coast Video in Paramus, those are all local uses with about 30 purchases on the account.

   Plaintiff submits its proffer –

   THE COURT: Mr. Mills, how can you possibly say that you had nothing to do with this account?

   MR. MILLS: I – Your Honor, I – I – I swore to the Rochelle Park Police Department, I'm in the process of doing ID theft complaints.  I never opened this account.  The only thing I can think of is possibly maybe an ex-girlfriend –

   THE COURT: Do you have – I assume your mother was living with you at the time or you were living with your mother?

   MR. MILLS: I was off and on with a girlfriend.

   THE COURT: Did she ever ask you why am I paying – why am I getting these bills and I'm paying for them?

   MR. MILLS: Your Honor, during the time –

   THE COURT: So you're  -- you would have me believe – you would have me believe that a credit card company sends bills to your address, your mother

> pays them, portions of them over a period of time, never questions you saying Scott, why am I paying these bills? And now you come in here and say I know nothing about it. I do not believe that. I absolute – that is incredible. No one would do that. I don't believe you.
> MR. MILLS: Your Honor, this is – this is what my – this is the kind of person that my mother is, she paid –
> THE COURT: I don't believe – your mother appears to be a very good person for paying those bills, but no matter how good she I'm sure at some point in time her resources are not unlimited, she's going to say why am I paying these bills for you? I don't believe you. I'm sorry, I don't believe you.
> MR. MILLS: In – in their own statement they – Capital –
> THE COURT: I don't believe you.
> MR. MILLS: -- from Capital One, we do not have a contract, there is no contract.
> THE COURT: I don't believe you. The bills were going to your house, the checks were coming –
> MR. MILLS: From my parent's house.
> THE COURT: -- from that house and for you to step inside this courtroom and say I knew nothing about it now, I don't – I just don't believe it.
> MR. MILLS: They were going to my parent's house, Your Honor? I never opened this account.
> THE COURT: You live there, you just said you lived there off and on –
> MR. MILLS: I said off – off and on. At the time –
> (simultaneous speakers)
> THE COURT: I've heard enough. I've read a 102 pages of this. There's no doubt in my mind, there's no rational fact finder could decide other – other than that the account is yours, it was being paid on your behalf. The motion for summary judgment for plaintiff is granted, def – defendant's cross-motion is denied. Them motion to dismiss is denied. Thank you.
> MR. BROGAN: Thank you, Your Honor. And defendant's motion for sanctions against me is also denied, Your Honor?
> THE COURT: That's also denied. Whatever –
> MR. MILLS: It was never filed.
> THE COURT: -- whatever you have in there about the Middlesex County ethics complaint and all, that's up to you, you do that – that's got nothing to do with me.
> MR. MILLS: Thank you, Your Honor.
> (Proceedings concluded)

(Defs.' Exh. T (12/7/2007 Hr'g. Trans. 3:3-11:17).) After ruling orally from the bench, Judge Rosa issued a written order "that Summary Judgment be and hereby is entered in favor of the Plaintiff and against the Defendant(s) SCOTT J MILLS in the sum of $1,756.39 plus costs." (Defs.' Exh. U (12/7/2007 order granting summary judgment).) Judge Rosa also filed an order

9

that denied Mills's motion to dismiss. (Defs.' Exh. V (12/7/2007 order denying motion to dismiss).) Mills subsequently filed a motion for reconsideration. After Judge Rosa heard oral argument on May 9, 2008, he denied Mills's motion. (Defs.' Exh. DD (5/9/2008 Hr'g. Trans.).) Each party filed papers and argued before Judge Rosa that the other side should be sanctioned and Judge Rosa denied sanctions all around. (*Id.*; Defs.' Exh. AA (1/30/2008 Mills's Factual Statement and Legal Argument ¶ 17).)

Mills subsequently filed a motion to "consolidate motions" and a "demand for a jury trial" in the Special Civil Part on March 31, 2008, as well as a motion for a stay pending appeal, all of which were denied by Judge Rosa after another round of oral argument held on July 18, 2008. (7/18/2008 Hr'g. Trans.) At the conclusion the argument, Mills asked the Court a procedural question:

> MR. MILLS: I just had one more question as far as moving – moving this case beyond the Appellate Division to Federal Court, subject matter jurisdiction.
> THE COURT: I can't help you there at all. I can't help you there at all.
> MR. MILLS: You're denying to move it to Federal Court?
> THE COURT: I have not – a removal petition is something I have no control over at all.

(Defs.' Exh. JJ (7/18/2008 Hr'g. Trans. 27:19-28:5).) Thereafter, Mills filed the complaint in this action in district court (D.E. 1) on July 30, 2008. It is undisputed that Mills never filed a direct appeal of Judge Rosa's decisions.

**III.   Discussion**

The overriding issue raised in these motions concerns the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). As a fundamental matter, "[i]t must be determined whether jurisdiction exists before proceeding to the merits of a case." *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 429 (D.N.J. 1999). In determining whether jurisdiction exists, the Court may consider evidence beyond the face of the pleadings demonstrating the existence or lack of

jurisdiction, and can make factual findings necessary to resolve disputes of fact. *See Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 1990).

A bedrock principle of subject matter jurisdiction is that "the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003). In other words, a lower federal court may not sit as a state appellate court. Two decisions of the United States Supreme Court, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 75 (1983), and *Rooker v. Fidelity Trust Co.*, 261 U.S. 114 (1923), stand for this principle, known as the "*Rooker-Feldman*" doctrine. The thrust of the *Rooker-Feldman* doctrine is that state court decisions cannot be appealed to any federal court other than the U.S. Supreme Court. *Desi's Pizza*, 321 F.3d at 419 (quoting *Parkview Assocs. P'shp. v. City of Leb.*, 225 F.3d 321, 325 (3d Cir. 2000)).

"To ensure that Congress's intent to prevent the lower federal courts from sitting in direct review of the decisions of a state tribunal is given effect, the *Rooker-Feldman* doctrine prohibits District Courts from adjudicating actions in which the relief requested requires determining that the state court's decision is wrong or voiding the state court's ruling." *Desi's Pizza*, 321 F.3d at 419 (internal citations omitted). According to the Third Circuit, "a claim is barred by *Rooker-Feldman* under two circumstances: first, if the claim was 'actually litigated' in state court prior to the filing of the federal action or, second, if the claim is 'inextricably intertwined with the state adjudication,' meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *Id.* Where the *Rooker-Feldman* doctrine is found to be applicable, this "divests a District Court of subject matter jurisdiction over those claims." *Id*; *see also Guarino v. Larsen*, 11 F.3d 1151, 1156-57 (3d Cir. 1993) ("District courts lack subject matter jurisdiction

once a state court has adjudicated an issue because Congress has conferred only original jurisdiction not appellate jurisdiction on the district courts.").

Earlier in this opinion, the Court examined in some detail the nature of Mills's claims, which he brought in this Court after entry of judgment against him in the Special Civil Part. The Court easily concludes from its careful review of the claims and the record on the defendants' motions that whether Mills owed the $1,756.[39] debt to Capital One was "actually litigated" before Judge Rosa in the state court action. He granted summary judgment on this precise claim. Judge Rosa also ruled on the propriety of the conduct of both parties, and denied all sanctions. Consequently, the *Rooker-Feldman* doctrine precludes this Court's review of the state courts' conclusion as to the debt owed of $1,756.[39] and the manner in which Capital One conducted the litigation before Judge Rosa. *See Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970) ("lower federal courts possess no power whatever to sit in direct review of state court decisions"). Because this court is prohibited from ruling upon any issues between Capital One and Mills in any way connected to the judgment of $1,756.[39], and because Mills's complaint makes clear that all claims against Capital One are related to that dispute, under Fed. R. Civ. P. 12(b)(1) the Court lacks subject matter jurisdiction to hear Mills's federal lawsuit against Capital One.

The *Rooker-Feldman* doctrine also prevents the Court from addressing issues "inextricably intertwined with the state adjudication," and from granting "federal relief" premised "upon a conviction that the state court was wrong." *Desi's Pizza*, 321 F.3d at 419. The complaint and Mills's other submissions makes claims against the Pressler defendants that arise from their representation of Capital One before Judge Rosa. There is no other factual context in which Mills interacted with the Pressler firm and the lawyers he is suing here. The complaint

12

repeatedly references the Pressler defendants' actions, strategies, alleged misdeeds, and the underlying debt of $1,756.[39], all of which is the subject matter of the original state court action or is "inextricably intertwined" with it. Accordingly, the *Rooker-Feldman* doctrine divests this Court of subject matter jurisdiction to hear any of the claims against the Pressler defendants. Accordingly, all of the claims against the Pressler defendants are dismissed.

Because Court is convinced it is divested of jurisdiction to entertain Mills's lawsuit, it need not address the defendants' alternative grounds for dismissal.

## IV.   Conclusion

For the foregoing reasons, Capital One's motion to dismiss (D.E. 27) and the Pressler defendants' motion to dismiss (D.E. 28) are granted. An appropriate order will be entered.

/s/Katharine S. Hayden_____
Hon. Katharine S. Hayden
U.S. District Judge